

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| MOLLY S. BILLINGS, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 6:08cv010 |
| STONEWALL JACKSON HOSPITAL and CARILION HEALTH SYSTEM, | ) |
| Defendants. | ) By: Michael F. Urbanski<br>) United States Magistrate Judge |

### MEMORANDUM OPINION

This matter is before the court on plaintiff Molly S. Billings' ("Billings") motion to compel defendant Carilion Health Systems' ("Carilion") in-house attorney and human relations consultant to testify concerning their discussions concerning plaintiff's termination. As these communications are plainly subject to the attorney-client privilege and no waiver or other exception applies, the motion to compel is **DENIED**.

I.

This case arises under the Americans with Disabilities Act ("ADA"). The complaint was filed on March 27, 2008 (Dkt. No. 1), and an Amended Complaint was filed on October 10, 2008. (Dkt. No. 27.) Billings claims that she was fired from her job at Stonewall Jackson Hospital because she was disabled in violation of the ADA. Specifically, Billings had breast cancer, and after surgery and treatment for the disease, she was restricted by her physician in her ability to lift, push or pull objects greater than five (5) pounds.

Plaintiff filed her Motion to Compel on April 20, 2009, "mov[ing] the court to compel defendants to produce [human resources consultant Kim Roe and corporate attorney Paul Douglas Henson] for depositions on questions pertaining to the issue of discussions had amongst Carilion employees in deciding whether to terminate Billings because of her disability." (Dkt. No. 57.) Plaintiff contends that she is entitled to this information because: (1) Roe and Henson were decision makers as to Billings' termination; (2) the content of Roe's and Henson's conversations is important to discovering the defendants' knowledge and extent of Billings' disability and corresponding ability to perform her job; (3) Carilion waived attorney-client privilege by disclosing portions of these communications previously; and (4) Carilion fabricated evidence, giving rise to the crime-fraud exception to attorney-client privilege. Id.

Defendants filed an opposition brief to Plaintiff's Motion to Compel on May 1, 2009, asserting that plaintiff is not entitled to the communications between Roe and Henson because: (1) even if Henson had taken a role in the decision to terminate Billings, that does not change the fact that the communications between he and Roe are protected from discovery under the attorney-client privilege; (2) Carilion has not waived the attorney-client privilege through the submission of certain documents to the EEOC; and (3) there is no substance to the claimed application of the crime-fraud exception to attorney-client privilege. (Dkt. No. 61.)

## II.

The attorney-client privilege has long been recognized as warranting special protection in order "to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v United States, 449 U.S. 383, 389 (1981). The predominant purpose of attorney-

2

client privilege is to afford "all communications between attorney and client absolute and complete protection from disclosure." In re Allen, 106 F.3d 582, 600 (4th Cir. 1997). For the privilege to apply, certain elements are required. An attorney-client relationship must exist, and the communication must be for the purpose of seeking legal advice. See United States v. Tedder, 801 F.2d 1437, 1442 (4th Cir. 1986). The attorney-client privilege protects from disclosure communications from a client to his lawyer or his lawyer's agent made in confidence relating to the lawyer's rendering of legal advice. Id. As Billings conceded at the hearing, there is no dispute that communications between Henson and Roe were made in confidence for the purpose of seeking legal advice. Since all of the elements of attorney-client privilege are present, the court must determine whether a waiver of privilege occurred or an exception to attorney-client privilege applies in this case.

"A client can waive an attorney-client privilege expressly or through his own conduct." Hanson v. United States Agency for Int'l Dev., 372 F.3d 286, 294 (4th Cir. 2004). Here, plaintiff contends that Carilion waived any attorney-client privilege by submitting to the EEOC a letter dated March 9, 2006 authored by Henson and enclosing an affidavit from Roe. Plaintiff also argues waiver from Carilion's Responses to Plaintiff's First Set of Interrogatories and Request for Production of Documents. See Apr. 20, 2009 Mot. to Cmpl. at 3. (Dkt. No. 57.) Plaintiff asserts that the following comments in Roe's affidavit draw attention to the conversations that occurred between Roe and Henson: "We handled the situation as authorized by the ADA," and "we determined that Ms. Billings was not qualified for her job." Id. at 3-4. However, at no point in her affidavit does Roe come close to discussing any of her conversations with Henson prior to Billings' termination. Plaintiff also asserts that Carilion revealed information pertaining to its

3

decision to terminate Billings through Henson's letter to the EEOC. Id. at 5. However, Henson's March 9, 2006 letter only discusses Billings' employment history and that her separation did not violate the ADA because she could no longer perform the essential functions of her job. The letter never mentions Roe or any conversations he had with her prior to Billings' termination. Rather, it is a letter written by a lawyer to the EEOC arguing his client's position. While the subject of the letter is obviously plaintiff's termination, nothing in that letter hints at the substance of the communications between Henson and Roe regarding Billings' termination. Henson's letter works no waiver of the privilege. Finally, plaintiff contends that Carilion's Responses to Plaintiff's First Set of Interrogatories and Request for Production of Documents waive the attorney-client privilege. Id. at 3. However, Carilion's responses only identify the persons who made the decision to terminate plaintiff's employment. These responses in no respect discuss or identify anything related to Henson's advice to Roe or Roe's communications to Henson concerning Billings that may have occurred leading up to her termination. After a thorough review of Roe's affidavit, Henson's letter to the EEOC, and Carilion's Responses to Plaintiff's First Set of Interrogatories and Request for Production of Documents, the court finds that these documents do not waive the attorney-client privilege.[1]

Nor has Carilion placed Henson's advice to Roe prior to Billings' termination at issue in this case. Advice of counsel is not asserted by Carilion as an affirmative defense; therefore the "at issue" doctrine does not apply. See Hearn v. Rhay, 68 F.R.D. 574, 580-81 (E.D. Wash. 1975)

---

[1] It bears noting that both Henson and Roe were deposed by plaintiff as to the substance of the submission to the EEOC and Roe's affidavit. Roe was deposed for nearly two hours and Henson one hour as to the facts of this case. Review of the deposition transcripts reveals that plaintiff was allowed to question these witnesses at length regarding their knowledge and involvement of the facts of the case, and the invocation of the attorney-client privilege was appropriately limited to questions concerning communications between Henson and Roe regarding legal advice.

4

(articulating three elements to what it called a "new and narrowly limited exception to the attorney-client privilege"). The "at-issue" exception to the attorney-client privilege applies in the following situation: (1) when the assertion of the privilege is a result of some affirmative act, such as filing suit, by the asserting party; (2) through the affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. Id. Carilion does not assert the defense of advice of counsel in this case; thus, the narrow "at-issue" exception does not apply.

Plaintiff also asserts that Carilion fabricated a document to submit to the EEOC, giving rise to the crime-fraud exception to the attorney-client privilege. See Apr. 20, 2009 Mot. to Cmpl. at 5. (Dkt. No. 57.) In order to overcome the attorney-client privilege, a party must make an independent prima facie showing of fraud. See In re Grand Jury Proceedings v. Under Seal, 33 F.3d 342, 348 (4th Cir. 1994). In order to make a prima facie showing of fraud, the Fourth Circuit has held that two tests must be satisfied: (1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme; and (2) the documents containing the privileged materials bear a close relationship to the client's existing or future scheme to commit a crime or fraud. Chaudhry v. Gallerizzo, 174 F.3d 394, 403 (4th Cir. 1999). The proof "must be such as to subject the opposing party to the risk of non-persuasion if the evidence as to the disputed fact is left unrebutted." Duplan Corp. v. Deering Milliken, Inc., 540 F.2d 1215, 1220 (4th Cir. 1976).

At the hearing, plaintiff argued that an undated two page document entitled "Job Description Supplemental Standard" for cafeteria workers was fraudulently created by Carilion

5

after Billings was terminated for the purposes of the EEOC proceeding.[2] Defendants strenuously deny the contention of fabrication. The document in question contains a description of the physical requirements associated with Billings' occupation, noting that the job requires her to be able to lift fifteen pounds, carry fifteen pounds, and push/pull ten pounds. Billings asserts that because this document is undated and plaintiff has been unable to determine its source or when it was created, it must have been fraudulently created. Careful examination of the record reflects that plaintiff's assertion is nothing more than speculation. In her discovery deposition, Kimberly A. Reese, a nurse employed at Carilion Stonewall Jackson Hospital, testified that she received the five pages of job descriptions attached to Deposition Exhibit 37 from Human Relations and gave them to Billings to give to her doctor along with a cover letter and form to fill out. The Return to Work form, cover letter from Reese and the last two pages of job descriptions are undated. While Reese could not recall the date when she gave these materials to Billings, it was obviously prior to her termination. As Reese testified that the last two pages of the job descriptions were given to Billings prior to her termination, Billings' assertion of post-termination fabrication are supposition without any basis. As such, there is no basis whatsoever for assertion of waiver of the attorney-client privilege under the crime-fraud exception.

### III.

For the stated reasons, it is hereby **ORDERED** that Plaintiff's Motion to Compel (Dkt. No. 57) is **DENIED**. It is clear that attorney-client privilege applies to the communications

---

[2] The document in question consists of two pages and is variously identified in the discovery materials in this case. Plaintiff's motion identifies it by document numbers 399-400, and it also appears as the last two pages of Deposition Exhibit 37. Deposition Exhibit 37 consists of seven pages, numbered 770 through 774, and two pages partially numbered only with "77." Although the court cannot be certain, presumably those two pages are numbered 775 and 776, with the last numeral lost in the copying process because the identification number was placed so close to the edge of the page.

between Henson and Roe. There is no exception to the attorney-client privilege requiring Henson and Roe to reveal their attorney-client privileged communications. Defendant has not asserted advice of counsel as a defense, the privilege has not been waived, and there is no basis for application of the crime-fraud exception. Plaintiff's motion to compel these witnesses to answer deposition questions about legal advice sought and rendered is **DENIED**.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion and accompanying Order to Plaintiff's counsel of record and to Defendants' counsel.

Enter this 15th day of June, 2009.

Michael F. Urbanski
United States Magistrate Judge