CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 13 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

MOLLY S. BILLINGS,                      )
                                  )
          Plaintiff,               )
                                  )
v.                                      )       Civil Action No. 6:08-CV-010
                                  )
STONEWALL JACKSON HOSPITAL        )
and                                     )
CARILION HEALTH SYSTEM,          )
                                  )       By: Michael F. Urbanski
         Defendants.              )       United States Magistrate Judge

## REPORT AND RECOMMENDATION

This matter is before the undersigned on cross motions for summary judgment, referred for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The issues have been fully briefed and oral argument was conducted on June 10, 2009. Plaintiff, Molly S. Billings ("Billings"), claims that defendants Carilion Health System ("Carilion") and Stonewall Jackson Hospital ("Stonewall Jackson") violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et. seq., by failing to accommodate a five pound lifting restriction and terminating her employment. Because genuine issues of material fact exist, the undersigned **RECOMMENDS** that summary judgment be **DENIED** and this case set for jury trial.

## I.

Billings was a long term employee of Stonewall Jackson, working in its cafeteria from 1991 to 2005.[1] Billings was diagnosed with breast cancer in 2000. She underwent her first

---

[1] While Billings' job remained essentially the same over the years, her job title changed several times throughout her employment. From 1991 to 1998, the job title was Dietary Server; in 1998 it changed to Dietary Aide-Cafeteria
(continued...)

surgery in July 2000 and returned to work in September 2000 with no restrictions. See Exhibit 6 to Plaintiff's Memorandum in Support of Motion for Summary Judgment (Dkt. #56.) (hereinafter Pl. S. J. Ex. 6.). An October 25, 2000 Disability Certificate from Shenandoah Valley Surgical Associates stated that Billings "should not perform repetitive lifting of anything greater than 10 lbs." (Pl. S. J. Ex. 5.) Billings had a second surgery in March 2001, and returned to work in May 2001, again with a ten pound lifting restriction. See Letter of Dr. Laura K. Knox, attached to Defendant's Summary Judgment Brief (Dkt. #49.) (hereinafter Def. S. J. Ex. 6.). Consistent with this restriction is a December 17, 2002 prescription pad note from Dr. Walter C. Kersch stating "Pt. cannot lift more than 10 lbs. and should not push mops etc. due to illness." (Pl. S. J. Ex. 8.) Between 2001 and 2004, Billings underwent several other procedures, and the ten pound restriction remained in place. After additional reconstruction, Billings returned to work on March 24, 2004 with a five pound lifting, pulling and pushing restriction provided by her plastic surgeon, Dr. Laura Knox. (Pl. S. J. Ex 9.)

Despite these restrictions, Billings received good reviews from her supervisors and suffered no adverse employment consequences throughout this period. Exhibits 1 and 2 to Billings' Summary Judgment Motion are performance evaluations done in 2000 and 2004. In the 2000 evaluation, Billings was rated as "meets expectations" or above in all twenty categories. No areas needing improvement were noted. Handwritten marginal notes on the evaluation form state "always excellent" and "excellent." Similarly, in her 2004 evaluation, Billings was rated as "meets expectations" in all thirty of the listed Major Duties and Responsibilities. Again, no areas

_____

[1](...continued)
Server/Cashier; in 1999 it became Cafeteria Server/Cashier. After 1999, Billings was employed as a Dietary Staff member.

2

needing improvement were noted. The marginal notes on this evaluation recite "Good Job! Good Job!" Significantly, neither the 2000 nor 2004 evaluations say anything about lifting or reflect any reservations about Billings' ability to perform her job.

Carilion bought Stonewall Jackson in July 2005,[2] and shortly thereafter Carilion sent Billings "to be reevaluated by her physician with regard to her ability to perform her essential job functions." (Pl. S. J. Ex. 13 at 4.) The subsequent written evaluation completed by Dr. Knox confirmed the five pound lifting, pushing and pulling restriction. (Pl. S. J. Ex. 20.) This evaluation also noted that Billings had reached maximum medical improvement. In making this assessment in September or October 2005, Dr. Knox testified that she must have talked to Billings, although she had no recollection of doing so, and her office records do not reflect any office visit by Billings since February 2005. (Knox Dep. 24-26, 28-29.) Dr. Knox testified that she never performed a functional capacity examination on Billings to see what she could actually lift, push or pull. (Knox Dep. 29-30.) Rather, Dr. Knox explained that a lifting restriction of five pounds is the standard limitation she places on patients who have had this type of surgery. (Knox Dep. 16.) Dr. Knox's assessment of maximum medical improvement was based on the length of time from her surgery. (Knox Dep. 27.) Billings provided the written restriction from Dr. Knox to her supervisor on or about September 22, 2005, and was discharged a month later on October 25, 2005. (Pl.'s S. J. Ex. 22.)

Carilion asserts that Billings was terminated because the five pound limitation precluded her from performing the essential functions of her job and that there were no reasonable

---

[2] Given that Billings was terminated following Carilion's acquisition of Stonewall Jackson, her employer will be referred to hereinafter as Carilion.

accommodations available. Carilion further states that Dr. Knox's September/October 2005 note provides confirmation that her lifting restriction was permanent. Kim Roe, a Carilion Human Resources Consultant, asserted in an affidavit signed on March 9, 2006 and provided to the EEOC, that given the five pound lifting restriction, Billings was unable to perform several essential functions of her job and was terminated as a result. These included: setting up coffee urns and carrying them to the serving line, sweeping and mopping floors, delivering patient trays, operating the meat slicer, and washing and scouring pots and pans. (Pl. S. J. Ex. 13.) Betty Sullivan, Billings' immediate supervisor, testified that other employees complained about having to do her job, but she also noted that there was generally a lot of complaining and bickering in the department. (Sullivan Dep. 28.) The defendants also assert that they were not able to schedule Billings for weekends or clean-up shifts at the end of the day. (Pl. S. J. Ex. 13.)

For her part, Billings asserts that she could perform the essential functions of her job, and that Carilion made no effort to accommodate her lifting disability. Billings maintains she could still do her old job, with a few minor exceptions. Billings described her job duties as primarily "serving, cashiering, cutting vegetables" and "waiting on customers." (Billings Dep. 15.) When asked what she was unable to do because of her restrictions, Billings responded, "I really don't recall anything I could not do except sweeping a whole big dining room and mopping the whole big floor and all, because I could not, you know, push the mop and everything, and pulling out real heavy trash bags." (Billings Dep. 25.) As to her schedule, Billings asserts that she did work every other weekend, that her regular shift was the morning shift, and that she never specifically requested not to work evening shifts. (Billings Dep. 41.)

4

Billings asserts that Carilion was motivated to cut costs at the overstaffed Stonewall Jackson Hospital by firing her and others, and steamrolled over her ADA rights in the process. Billings testified that "[t]hey told me that they was not going to accommodate me any longer, and that I did not have a job, not now or ever in that hospital." (Billings Dep. 94.) Kathryn Bare, head of Stonewall Jackson's food service department, explained that when Carilion purchased Stonewall Jackson it was overstaffed, and because of recent financial problems at the hospital, Carilion needed to use fewer resources. (Bare Dep. 44.) Indeed, there is no real dispute that after the acquisition, Carilion was looking at current staffing to see if savings could be obtained. In the affidavit of Kimberly Roe, Carilion Human Resources Consultant, submitted to the EEOC, Roe stated that "[w]hen Carilion purchased SJH, we knew that we had to operate the hospital more efficiently. In doing so, one of our objectives was to assess the staffing at CSJH and determine such things as whether jobs were necessary or should be eliminated, whether jobs should be relocated, whether jobs could be consolidated and whether folks were performing their jobs." (Pl. S. J. Ex. 13.) Billings was one of sixteen Stonewall Jackson employees terminated in 2005. (Pl. S. J. Ex. 14.)

As to the physical requirements of Billings' hospital food service job, the record contains four documents which purport to detail her duties as a Dietary Staff Member. The first document is a 2000 Performance Evaluation form, which makes no reference to any lifting, pushing or pulling requirement. (Pl. S. J. Ex. 1.) Attached to the 2000 Performance Evaluation is a document entitled "Supplemental Cafeteria Worker," which contains a schedule of responsibilities for this position. Again, there is no specific reference in this document to lifting, pushing or pulling requirements.

5

The next document is a 2004 Job Description/Criteria Based Performance Evaluation signed by Billings on November 12, 2004, which includes a list of thirty major duties and responsibilities. It includes gathering and setting up all food items for the patient tray line, preparing beverages, salads, and dessert items, and participating in the receiving and stocking of food items. Of significance, this Job Description/Evaluation contains no requirement that Billings must be able to lift, push or pull a certain amount of weight. (Pl. S. J. Ex. 2.)

The parties dispute the significance of a third document, a job description entitled "Stonewall Jackson Hospital, Job Description Supplemental Standard, Physical and Mental Requirements & Environmental Conditions for Essential Job Functions, Job Title: Café Worker" (hereinafter "Essential Job Functions document"). This document, which reflects a lifting and carrying requirement of fifteen pounds and a pushing and pulling requirement of ten pounds, is heavily relied upon by Carilion to establish that Billings could not perform the essential functions of her cafeteria job. (Pl. S. J. Ex. 13.) Because it is undated and unsigned, Billings suggests that it was fabricated for the purposes of this lawsuit. Although the specific origins of this document are unclear, there is no foundation for Billings' suggestion of fabrication beyond her counsel's speculation. The record reflects that Kimberly Reese, a Carilion nurse, testified that she was contacted by Carilion Human Resources in the fall of 2005 and instructed to ensure that Billings receive a physician evaluation. Reese testified that she provided the Essential Job Functions document to Billings at that time and asked her to take it to Dr. Knox so that Dr. Knox could evaluate Billings' continued capability to perform the essential duties of her position. (Reese Dep. 8-9; Pl. S. J. Ex. 20.)

6

Carilion also produced a document dated December 12, 2005 entitled "Physical Job Requirements for Molly Billings." It states that Billings' position requires the ability to lift up to twenty pounds frequently and up to one hundred pounds occasionally, and carry ten pounds frequently and up to one hundred pounds occasionally. The document states that the café worker job requires repetitive pushing and pulling. (Pl. S. J. Ex. 25.) This document post-dates Billings' termination by several months.

## II.

Federal Rule of Civil Procedure 56(c) provides that a court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." <u>Id.</u> at 250. In considering a motion for summary judgment under Rule 56, the court must view the record as a whole and draw reasonable inferences in the light most favorable to the nonmoving party. <u>See, e.g.</u>, <u>id.</u> at 248–50 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–24 (1986); <u>In re Apex Express Corp.</u>, 190 F.3d 624, 633 (4th Cir. 1999).

7

The ADA provides that, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). One form of discrimination is "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship . . . ." 42 U.S.C. § 12112(b)(5)(A). A qualified individual is a person with a disability who, with or without reasonable accommodation, can perform the essential functions of the position. 42 U.S.C. § 12111.

In a failure to accommodate claim, such as this one, the plaintiff establishes a prima facie case by showing, "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . .; and (4) that the [employer] refused to make such accommodations." Rhoads v. Fed. Deposit Ins. Corp., 257 F.3d 373, 387 n.11 (4th Cir. 2001). Carilion first argues that Billings has failed to establish that she has a disability within the meaning of the ADA.

A disability, as defined by the ADA, is "(a) a physical or mental impairment that substantially limits one or more major life activities of such individual; (b) a record of such impairment; or (c) being regarded as having such an impairment." 42 U.S.C. § 12102.[3] Major

---

[3] Billings' EEOC charge only addresses disability under (a). As such, the issue in this case is whether she meets the definition of a disability under that provision. See McIntyre v. APAC Customer Services, Inc., No. 4:04cv83, 2005 (continued...)

life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The EEOC interpretive guidelines expand upon this list and include sitting, standing, lifting, and reaching.[4] 29 C.F.R. Pt. 1630, App. § 1630.2(i).

Substantially limits means, "(i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1). Factors to be considered in evaluating whether someone is substantially limited in a major life activity also include the nature, severity, and long term impact of an impairment. 29 C.F.R. § 1630.2(j)(2).

To establish a substantial limitation in a major life activity, the Supreme Court has required that a plaintiff demonstrate that the impairment prevents or severely restricts the individual from doing activities that are central to daily life. Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002), superseded by statute, ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 3553.[5] A mere medical diagnosis of an impairment is insufficient. Rather, a plaintiff is required to offer evidence that the extent of the limitation, in his or her experience,

---

[3](...continued)
WL 5369158 (E.D. Va. 2005 May 13, 2005), aff'd, 177 F.App'x 269 (4th Cir. 2006).

[4] The Supreme Court has not specified what level of deference should be given to the interpretive guidelines, Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 194 (2002), but has held that such guidelines, "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986) (quoting Gen. Elec. Co. v. Gilbert, 429 U.S. 125, 141-42 (1970)).

[5] As is explained in Section IV, infra, the standard set forth in Toyota is applicable to this matter.

9

is substantial. Id. at 198. This accords with the requirement that the determination of whether a person is disabled involve an individualized inquiry, particular to the facts of each case. EEOC v. Sara Lee Corp., 237 F.3d 349, 352 (4th Cir. 2001).

## IV.

Plaintiff argues that the ADA Amendments Act ("Amendments") are applicable to this matter. In 2008, Congress enacted the Amendments and, among other things, added a list of major life activities, which includes lifting. The findings and purposes of the Amendments note that the ADA intended the definition of disability to be interpreted consistently with how the courts applied the definition of a handicapped individual under the Rehabilitation Act, but this expectation had not been fulfilled. ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553. Additionally, "the holding of the Supreme Court in Toyota Motor Manufacturing, Kentucky, Inc v. Williams, 534 U.S. 184 (2000), further narrowed the broad scope of protection intended to be afforded by the ADA." Id. In particular, it interpreted the term 'substantially limits' to require a greater degree of limitation than was intended by Congress. The purpose of the Amendments is to carry out the objectives of the ADA by providing a broad scope of protection and reject the reasoning of Toyota and cases following it. Id.

Since the Amendments expand the definition of a disability to include lifting as a major life activity, the first question presented is whether the Amendments should be applied retroactively. The Supreme Court has stated that, "the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." Landgraf v. USI Film Prods., 541 U.S. 244, 265 (1994). To operate retroactively, a provision or statute must attach new legal consequences to events completed before its

10

enactment. Id. at 269-70. The Court has long held a presumption against statutory retroactivity, unless Congress made clear its intent. Id. at 270. A requirement that Congress is explicit in its intention for a statute to be applied retroactively allocates to Congress the responsibility to make policy judgments regarding the advantages and disadvantages of doing so, and weighing the ameliorative effects of a statute as applied to cases before its enactment against the potential unfairness of retroactive application. Id. at 272. Congress, in enacting the Amendments, did not affirmatively state that they apply to cases pending where the events in question took place before the Amendments were in effect. If applied in this manner, the Amendments would operate retroactively because, by expanding the scope of individuals considered disabled under the ADA, more businesses would be liable for actions taken with respect to individuals not previously protected under it. With potential retroactive effect and no clear Congressional language of retroactive intent, "the fact that Congress passed the amendments to counteract Supreme Court decisions and restore the scope of the ADA is not sufficient to overcome the presumption against retroactive application." Schmitz v. Louisiana, No. 07-891-SCR, 2009 WL 210497, at *3 (M.D. La. Jan. 27, 2009). Although the Fourth Circuit has not ruled on the retroactivity of the Amendments, several other circuits, namely the Fifth, Sixth and Seventh Circuits, as well as several district courts, also have concluded that the Amendments should not be applied retroactively in cases such as this one. See E.E.O.C. v. Agro Distribution, LLC, 555 F.3d 462, 469 n.8 (5th Cir. 2009); Millohand v. Sumner County Bd. of Educ., No. 08-5568, 2009 WL 1884376 at *3 (6th Cir. Jul. 2, 2009), Kiesewetter v. Caterpillar Inc., 295 F.App'x 850, 851 (7th Cir. 2008); Burkhart v. Intuit, Inc., No. CV-07-675-TUC-CKJ, 2009 WL 528603, at *11 n.4 (D. Ariz. Mar. 2, 2009); Lekich v. Municipal Police Officers Educational Training Com'n., No.

11

08-1048, 2009 WL 513260, at *8 n.3 (E.D. Pa. Feb. 26, 2009); Rudolph v. U.S. Enrichment Corp., Inc., No. 5:08-CV-00046-TBR, 2009 WL 111737, at *6 (W.D. Ky. Jan. 15, 2009); White v. Sears, Roebuck, & Co., No. 07-CV-4286 , 2009 U.S. Dist. LEXIS 35554, at *16 (E.D.N.Y. Apr. 27, 2009). Consistent with this persuasive authority, the undersigned does not believe the Amendments should be applied retroactively.

**V.**

Carilion asserts that Billings is not disabled for ADA purposes, and states that her deposition makes it plain that her impairments do not substantially limit her in any major life activity.

For example, when generally asked how the cancer and mastectomy affected her day-to-day living, Billings responded that "[i]t hasn't affected it." (Billings Dep. 97.) Billings acknowledged that she "can do things normal people can do," including grocery shopping. Id. Billings testified that she hoped she could do what others her age could do, and explained "[a]s far as doing my – my housework, yes, I can do most things that I have to do at home. But if I was on another job eight hours a day, I can't tell you whether I could or whether I couldn't." (Billings Dep. 125-26.)

When asked specifically about lifting, however, Billings stated, "I still need a little help lifting. I don't lift no whole lot." (Billings Dep. 140.) If there is something heavy that needs to be lifted, her husband does it for her. (Billings Dep. 144.) At one point, Billings asserted that she could lift over five pounds, even though her doctor said she ought not do so. (Billings Dep. 84.) Later, she stated that she actually does not know whether she can lift five pounds or not. (Billings Dep. 132.) Thus, even following her deposition, there is a factual issue as to just what

Billings could or could not lift. Regardless of what Billings says she can or cannot do, the record is undisputed that her treating plastic surgeon imposed on her a limit of lifting, pulling and pushing no more than five pounds and that limitation prompted her termination.

The question of whether Billings' lifting impairment meets the <u>Toyota</u> standard is further clouded by the declarations submitted by her family members in opposition to the summary judgment motion. Billings' daughter, Amanda Truslow, stated in her declaration that her mother's ability to lift is limited "somewhat." (Pl.'s S. J. Ex. 3.) She said that she "could no longer lift heavy things because lifting caused edema and pain." <u>Id.</u> Additionally, Billings can no longer do as much housework at home or lift her granddaughter, as she was able to before the surgery. Billings' other daughter, Sharon B. Fox, also asserted that Billings' ability to lift is limited "somewhat," and that Billings can no longer lift heavy bags of groceries or baskets of laundry, or move heavy furniture. (Pl.'s S. J. Ex. 12.) "She can lift some things that are not too heavy, like a pot of beans, for example, she does pretty well though and has learned to live with her limitations. With a little help she does just fine." <u>Id.</u> Sam Billings, plaintiff's husband, stated in his declaration that, "[i]f she tried to lift too much, her arms would swell and become sore . . . After the surgeries, Molly could not lift as much as she could before the surgeries. She can lift some things that are not too heavy. For example, she can lift half a gallon of milk, but I doubt that she could lift a gallon. She does pretty well though." (Pl.'s S. J. Ex. 11.)[6]

---

[6] Carilion moved to strike the declarations of Billings' daughters and husband because these three persons were identified in Billings' Rule 26 disclosures as having knowledge as to damages. Carilion argues, therefore, that the declarations are inadmissible for any purpose other than damages. Carilion argues that to allow Billings' family members to testify as to what she can and cannot do subjects it to "trial by ambush." While Carilion's argument has some superficial appeal from the face of Billing's Rule 26 disclosures themselves, it makes no sense whatsoever to preclude family members from testifying as to Billings' physical capabilities which they observe. Moreover, to the extent Billings' damages are subject to mitigation, what she can and cannot do relates to damages. As such, the motions to strike the
(continued...)

In her Amended Complaint, Billings alleges that her "physical impairment substantially limited one or more of plaintiff's major life activities, including, but not limited to, caring for herself, performing manual tasks, lifting, pushing, pulling and working." Amended Complaint ¶15. In her Summary Judgment brief, Billings asserts that "[t]he evidence compels a finding that Billings is limited in the major life activities of lifting, pushing or pulling more than five pounds, and, by inference, all major life activities affected as a result of her breast cancer, surgery and lifting, pushing or pulling restriction." (Pl. S. J. Br. at 16.) Indeed, there is no evidence in the summary judgment record of any impairment other than the restriction on lifting, pushing or pulling more than five pounds. There is a substantive difference between the proof required in a claim asserting a substantial limitation in the major life activity of working as opposed to the major life activity of lifting. In the former, the Supreme Court has required a plaintiff to prove an additional element, that she is unable to work in a broad class of jobs, requiring the court to consider factors such as the geographical area and training and skills of the plaintiff. Sutton v. United Air Lines, 527 U.S. 471, 491-92 (1999), superseded by statute, ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 3553; Taylor v. Federal Express Corp., 429 F.3d 461, 464 (4th

---

⁶(...continued)
declarations of Fox, Truslow and Sam Billings are **DENIED**. Carilion also moved to strike Billings' submission of the EEOC Determination and notes from an EEOC Investigator. Admission of the EEOC Determination is within the discretion of the district court, based on a determination whether such admission may be more prejudicial than probative. See Goldberg v. B. Green and Co., Inc., 836 F.2d 845, 848 (4th Cir. 1988), citing Cox v. Babcock and Wilcox Co., 471 F.2d 13, 15 (4th Cir. 1972), and relying on Smith v. Universal Services, Inc., 454 F.2d 154, 160 (5th Cir. 1972) (Dyer, J., dissenting). Carilion argues that the EEOC Determination is conclusory and therefore inadmissible. The undersigned agrees. The EEOC Determination is little more than a recitation of plaintiff's allegations, and the undersigned believes its prejudicial impact outweighs it probative value. The notes of the EEOC Investigator as to his interviews of Billings and two former co-workers, Carolyn Hill and Teresa Tyree, are not admissible in evidence as they are hearsay within hearsay, and plaintiff cites no hearsay exception to justify their admission. Accordingly, the motions to strike the EEOC Determination and notes from the EEOC Investigation are **GRANTED**.

Cir. 2005); see also Corrigan v. Perry, 961 F. Supp. 132, 135-36 (E.D. Va. 1997)(Discussing additional element in a Rehabilitation Act Claim.)

The first question to be addressed is whether lifting may be considered a major life activity for the purposes of the ADA. As noted above, while the regulations in place at the time of Billings' termination do not include lifting in the list of major life activities, this listing was not intended to be exhaustive. Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 726 n.7 (5th Cir. 1995). "Other major life activities could include lifting, reaching, sitting and standing." Id., citing 29 C.F.R. § 1630, Appendix to Part 1630 – Interpretive Guidance on Title I of the Americans with Disabilities Act, § 1630.2(1).

Most of the Circuit Courts of Appeals have found lifting to be a major life activity for the purposes of the ADA. See Gillen v. Fallon Ambulance Serv., Inc., 283 F.3d 11, 21 (1st Cir. 2002) ("Whether lifting pen to paper or glass to mouth, lifting is an integral part of everyday life and seems to fit comfortably within the parameters set by the Court."); Colwell v. Suffolk County Police Dept., 158 F.3d 635, 642 (2d Cir. 1998) ("We have identified as other 'major life activities,' including, but not limited to, 'sitting, lifting, or reaching.'") (citing Ryan v. Grae & Rybicki, 135 F.3d 867, 870 (2d Cir. 1998)); Marinelli v. City of Erie, Pa., 216 F.3d 354, 362 (3d Cir. 2000) ("[T]he EEOC regulations indicate that 'lifting' is a major life activity."); Jenkins v. Cleco Power LLC, 487 F.3d 309, 315 (5th Cir. 2007) ("This court has recognized that . . . 'major life activities could include lifting, reaching, sitting, or standing.'") (citing Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 725 n.7 (5th Cir. 1995)); Henderson v. Ardco, Inc., 247 F.3d 645, 650 (6th Cir. 2001) ("Major life activities involved here include lifting and working."); Mack v. Great

15

Dane Trailers, 308 F.3d 776, 781 n.1 (7th Cir. 2002)[7] ("According to EEOC regulations, lifting is a major life activity."); Wellington v. The Lyon County School District, 187 F.3d 1150, 1154 (9th Cir. 1999) ("Although we recognized that lifting was a 'major life activity' . . . "); Lowe v. Angelo's Italian Foods, Inc., 87 F.3d 1170, 1172 (10th Cir. 1996) ("[P]laintiff has presented evidence which creates a genuine issue of material fact with respect to whether her ability to lift [limited to fifteen pounds] is substantially impaired.").

The Fourth Circuit has not expressly held lifting to be a major life activity, although a close reading of its opinion in Williams v. Channel Master Satellite Systems, 101 F.3d 346 (4th Cir. 1996), suggests that it would do so. In Channel Master, plaintiff alleged that she was substantially limited in the major life activities of lifting and working because she was restricted from lifting more than twenty-five pounds. The Fourth Circuit first noted that the district court erred by not addressing Williams' claim that she was substantially limited in the major life activity of lifting, but then categorically held that "[l]ike the Eighth Circuit, we hold as a matter of law . . . a twenty-five pound lifting limitation – particularly when compared to an average person's abilities – does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity." Channel Master, 101 F.3d at 349 (citing Aucutt v. Six Flags Over Mid-America, 85 F.3d 1311, 1319 (8th Cir. 1996)). Further, in Taylor v. Federal Express Corp., 429 F.3d 461, 463 n.2 (4th Cir. 2005), the Fourth Circuit noted that "[o]ur opinion in Williams should not be read to create a per se rule that a twenty-five pound lifting restriction can never constitute a disability. The Supreme Court has made clear that disability

_____

[7]But see Mays v. Prinicipi, 301 F.3d 866, 869 (7th Cir. 2002)(expressing doubt that lifting more than ten pounds is a major life activity.)

16

determinations require an individualized inquiry," citing the Court's opinion in Toyota and Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 556 (1999).

The Eighth Circuit has recently refined its approach to cases alleging ADA discrimination where the impairment is a restriction on lifting. In Nuzum v. Ozark Automotive Distributors, Inc., 432 F.3d 839, 844 (8th Cir. 2005), the Eighth Circuit noted that "[o]ur Circuit has recognized the basic motor function of 'lifting' as a major life activity. Yet, in cases in which plaintiffs have established restrictions on lifting, we have said flatly that restrictions on lifting will not be enough to establish disability." Id., citations omitted. The court continued:

> In those cases, we did not consider whether a restriction on lifting a certain weight limited the plaintiff in comparison with an average member of the population, which is the method of analysis specified by the regulations for determining substantial limitation. See 29 C.F.R. § 1630.2(j)(1). Thus, we did not simply say that a such-and-such pound limit was too high to be a substantial limitation; rather, we said lifting limitations alone were not enough to establish disability. If no amount of limitation on an activity suffices to establish disability, then the activity is not a major life activity in its own right. We have said, however, that a substantial limitation of a constellation of such basic motor functions could suffice to prove disability. Therefore, rather than view lifting as a major life activity in its own right, it is more accurate to say that it is a part of a set of basic motor functions that together represent a major life activity.

Id. at 845. Thus, in the Eighth Circuit, while lifting may be designated as a major life activity, a finding of disability turns not on a particular motor ability limitation but on the net effect of the limitation on the set of activities that are of central importance to most people's daily lives. The

17

Eleventh Circuit has followed the lead of the Eighth Circuit. Carr v. Publix Super Mkts., Inc., 170 F.App'x 57, 61 (11th Cir. 2006).[8]

Assuming that the Fourth Circuit would find that lifting is a major life activity, the next question to be addressed is whether Carilion has established as a matter of law that Billings' five pound lifting restriction does not substantially limit that activity. In determining whether an individual is substantially limited, the regulations instruct the court to examine the nature, severity, and long term impact of an impairment. Cases under the ADA are extremely fact specific, EEOC v. Sara Lee Corp., 237 F.3d 349, 352 (4th Cir. 2001) ("The determination of whether a person is disabled is an individualized inquiry, particular to the facts of each case.") (citing Sutton v. United Air Lines, 527 U.S. 471, 483 (1999)); Ennis v. Nat'l Ass'n of Bus. and Educ. Radio, Inc., 53 F.3d 55, 59 (4th Cir. 1995), and the undersigned believes that under the particular facts of this case a genuine issue of material fact exists as to this issue requiring resolution by a jury. In short, a reasonable juror may well decide that a person who cannot lift so much as a five pound bag of sugar is substantially limited in the major life activity of lifting, precluding summary judgment. The long term impact of Billings' restriction is undisputed, as Dr. Knox opined that it is permanent. The regulations also instruct the court to examine the

---

[8] The seminal Toyota case itself was in large measure a lifting case, but did not reach the question of whether lifting is a major life activity. In Toyota, plaintiff Williams was permanently restricted from lifting more than twenty pounds or from frequently lifting or carrying more than ten pounds, engaging in constant repetitive flexion or extension of her wrists and elbows, performing overhead work or using vibratory or pneumatic tools. 534 U.S. at 187-88. Williams claimed that these physical impairments substantially limited her in a variety of claimed major life activities, including manual tasks, housework, gardening, playing with children, lifting and working. The district court agreed with Williams that performing manual tasks, lifting and working are major life activities, but found the evidence insufficient to demonstrate that she was substantially limited in lifting or working. On appeal, the Sixth Circuit found Williams was substantially limited in performing manual tasks, and thus did not reach whether she was substantially limited in the major life activities of lifting or working. In its decision, the Court noted that "[w]e express no opinion on the working, lifting or other arguments for disability status that were preserved below but which were not ruled upon by the Court of Appeals." 534 U.S. at 193.

18

limitation as compared to the abilities of individuals in the general population. Because Billings is sixty-seven years old, Carilion argues that her lifting limitation may not be as substantial when compared to other individuals her age, but no evidence was presented on this point other than Billings' own testimony that she hoped she could do things other people of her age were doing, but that she did not know. (Billings Dep. 125, 144.)

To be sure, the cases interpreting the ADA create a high threshold for obtaining protection under the statute, but these cases do not compel a specific result here or eliminate the jury question as to whether Billings is substantially limited in a major life activity. The Supreme Court requires that a substantial limitation on major life activities prevent or severely restrict the individual from doing activities that are central to daily life. Toyota, 534 U.S. at 194. It also requires that a plaintiff provide more than a medical diagnosis, and instead explain how the limitation is substantial in terms of his or her own experiences. Id. at 198. While Billings admitted that she believes her cancer and mastectomy has not affected her day-to-day living, the testimony is consistent that she cannot lift what she was able to before her surgery. Based on these facts, a jury could conclude that her limitations do not meet the standard required by Toyota. On the other hand, based on assertions that Billings needs help lifting and is unable to lift many things, including her grandchild, bags of groceries, baskets of laundry, or even a gallon of milk, as well as the five pound lifting, pulling or pushing restriction imposed by her doctor, a jury could conclude that Billings' lifting impairment severely limits her ability to perform activities central to daily life.

Courts routinely grant summary judgment for employers in ADA cases involving persons restricted to lifting twenty-five pounds or more, finding that the substantially limited requirement

is not met. See, e.g., Channel Master, 101 F.3d at 349. Other courts have held even greater

weight restrictions not to be disabling impairments under the ADA. For example, in Marinelli v.

City of Erie, 216 F.3d 354, 364 (3d Cir. 2000), the Third Circuit held that a ten pound lifting

restriction did not substantially limit plaintiff's ability to lift. Marinelli v. City of Erie, 216 F.3d

354, 364 (3d Cir. 2000). Citing the Fourth Circuit's decision in Williams v. Channel Master, the

Eighth Circuit's decision in Aucutt and the Fifth Circuit's decision in Ray v. Glidden Co., 85

F.3d 227, 229 (5th Cir. 1996)[9], for the proposition that a twenty-five pound lifting restriction was

not significantly limiting, the Third Circuit concluded that "[a]s Marinelli's ten-pound limitation

is not far removed from the twenty-five pound restrictions our sister circuits have held not to

render one disabled under the ADA, we would also hold that Marinelli's lifting restriction does

not render him sufficiently different from the general population such that he is substantially

limited in his ability to lift." Id. More recently, the Western District of Virginia granted

defendant's motion to dismiss an ADA case filed by a pro se plaintiff alleging a ten pound lifting

restriction, finding that the restriction bore no relation to her actual job duties. Chandler v.

McKee Foods Corp., No. 5:08cv00062, 2009 U.S. Lexis 5792 (W.D. Va. Jan. 29, 2009). That

aspect of the Chandler decision, however, has no application to this case where Billings was fired

because of the very impairment she alleges.

There are very few decided cases concerning a lifting restriction as rigorous as the five

pound one imposed on Billings. In an unpublished per curiam decision, the Fourth Circuit held a

_____

[9]In Ray, plaintiff lift truck operator was restricted from lifting 44-56 pound containers all day, although he could lift them for one to three and one half hours per day. The Fifth Circuit found that Ray can lift as long as he avoids heavy lifting, and concluded that "inability to perform that discrete task does not render a person substantially limited in a major life activity." 85 F.3d at 229.

five pound lifting restriction to be insufficient to constitute disability for ADA purposes. Daye v. School Board of the City of Norfolk, 18 F.App'x 125, 127 (4th Cir. 2001). Ava Daye worked for the Norfolk school system in a variety of positions, most recently as a kindergarten teacher's assistant. When the Norfolk School Board eliminated this position system-wide in 1994, Daye was not offered a contract for the ensuing school year. Daye filed suit, claiming that she was discriminated against because she was not offered a position as a library assistant. Daye's medical condition involved a history of multiple strokes, and her doctor indicated that lifting is contraindicated. The Fourth Circuit affirmed the district court's grant of summary judgment, finding Daye not disabled under the ADA for three reasons. First, the court held that "we cannot conclude that Daye was disabled because of her inability to lift objects weighing more than five pounds." Id. at 127. As support for this statement, the court cited Williams, parenthetically noting that it stood for the proposition that "lifting limitations did not constitute disability." Id. Williams, of course, was a twenty-five pound case. The court also cited Fitch v. Solipsys, 94 F. Supp. 2d 670, 675 (D. Md. 2000), for the same proposition. Fitch, however, involved a restriction against heavy lifting (over forty pounds). The court went on to note in Daye that even were she considered disabled for purposes of the ADA, there was no error in the district court's conclusion that she was not qualified for the library assistant position based on unsatisfactory performance evaluations. Finally, the court noted that Daye failed to prove that she was discriminated against because of disability. In this regard, the facts of Daye are a far cry from those presented here, especially given Billings' history of positive performance evaluations and the fact that she was, in fact, terminated because of her lifting restriction. As such, the undersigned believes that Daye is limited to its facts and declines to read the Fourth Circuit's

21

unpublished per curiam opinion as a blanket prohibition against any ADA claims based on a lifting restriction. This belief is supported by footnote two of the Fourth Circuit's Taylor opinion where a different panel of that court declined to create a per se prohibition against a finding of disability in a case involving a twenty-five pound lifting restriction. 429 F.3d at 463, n.2.[10]

The cases principally relied on by Carilion in its brief from this district do not mandate entry of summary judgment for the employer in this case. In Nance v. Quickrete Co., No. 4:06cv58, 2007 U.S. Dist. LEXIS 40872 (W.D. Va. 2007), plaintiff admitted that he could perform everyday life activities, and his only limitation was not being able to drive a truck more than eleven hours a day. The court construed the pro se plaintiff's allegations to allege a substantial limitation in the major life activity of working, which, following Taylor v. Federal Express Corp., 429 F.3d 461, 464 (4th Cir. 2005), and Sutton v. United Air Lines, 527 U.S. 471, 492 (1999), required a plaintiff to prove that she is "precluded from more than one type of job, a specialized job, or a particular job of choice." In both Nance and Taylor, the plaintiff claimed to be substantially limited in the major life activity of working, and each plaintiff failed to adduce sufficient evidence to prove that their impairments rendered a broad range of jobs unavailable to them. To the extent that ¶ 15 of Billings' Amended Complaint alleges that she is limited in the major life activity of working, that aspect of her claim contains the same infirmity. However, the focus of Billings' claim is on the major life activity of lifting, rather than working, which does not require her to prove that there is a broad range of jobs which she cannot do. Likewise, in

---

[10] The Fourth Circuit also had occasion to consider a five pound lifting restriction in Pollard v. High's of Baltimore, Inc., 281 F.3d 462 (4th Cir. 2002), but this case is not apropos as the court decided the case on the basis that the impairment was only temporary and, as such, could not qualify as a disability. 281 F. 3d at 468-70.

22

Papproth v. E.I. DuPont de Nemours and Co., 359 F. Supp. 2d 525 (W.D. Va. 2005), plaintiff alleged that she was substantially limited in her ability to work, yet had found other work. The court was skeptical of plaintiff's claim that concentrating and maintaining stamina were major life activities, and regardless held that plaintiff had failed to establish that she was substantially limited in those activities. Finally, Billings' lifting restriction contrasts with the restrictions in Kothe v. Continental Teves, Inc., 461 F. Supp. 2d 466 (W.D. Va. 2006), where the court found plaintiff's inability to wear steel toed shoes and four week restriction on standing for periods of one hour at a time did not substantially limit his major life activity of standing and walking.

Given the rigorous elements required to prove an ADA case, it is not surprising that there are many reported decisions holding that lifting restrictions of various weights do not rise to the level of an ADA disability, and just a few in which a plaintiff alleging a lifting restriction has been successful in surviving summary judgment under the ADA. See Martin v. Lockheed Martin Missiles and Space Co., 187 F.3d 648, 648 (9th Cir. 1999) (Plaintiff presented "sufficient evidence to raise a question of whether she is disabled on account of her ten-pound lifting restriction to the extent that it substantially limits her major life activity of lifting.")[11]; Lowe v. Angelo's Italian Foods, Inc., 87 F.3d 1170, 1174 (10th Cir. 1996) (holding that a genuine issue of material fact exists with respect to whether a fifteen pound lifting restriction substantially impairs the major life activity of lifting); Gallegos et al v. Swift & Co., 237 F.R.D. 633, 644-45 (D. Colo. 2006) (Summary judgment denied on issue of substantial limitation on major life activity of lifting, concluding that Tenth Circuit opinion in "Lowe establishes that an overall lifting limit of

---

[11]It is worth noting that while the Ninth Circuit in Martin believed plaintiff had met this requirement, it held that she failed to present sufficient evidence to raise a triable issue of fact on the further requirement of whether her disability could be reasonably accommodated, and affirmed the grant of summary judgment.

23

fifteen pounds is sufficient to defeat summary judgment."); Wheaton v. Ogden Newspapers, Inc., 66 F. Supp. 2d 1053, (N.D. Iowa 1999) ("[T]he court concludes that Wheaton has generated a genuine issue of material fact as to whether her back condition [which limits her ability to lift objects weighing more than ten pounds] substantially limits the 'major life activities' of 'lifting' and 'standing.'"). Regardless of this disparity in authority, the undersigned cannot conclude as a matter of law that the inability to pick up objects as light as a five pound bag of sugar does not constitute a substantial limitation on the major life activity of lifting. This issue must be resolved by the jury.

## VI.

With far less difficulty, the undersigned recommends that summary judgment be denied for both parties on the question of whether Billings could perform the essential functions of her job, with or without reasonable accommodation.

"Essential functions" are defined as "the fundamental job duties of the employment position the individual with a disability holds or desires. The term 'essential functions' does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1); see also Tyndall v. Nat'l Educ. Ctrs., Inc., 31 F.3d 209, 213 (4th Cir. 1994) (Essential functions are ones that "bear more than a marginal relationship to the job at issue."). A job function may be considered essential for reasons such as: "the reason the position exists is to perform that function," there are a "limited number of employees available among whom the performance of that job function can be distributed," or the function is "highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function." 29 C.F.R. § 1630.2(n)(2). The ADA provides that "consideration shall be given to the employer's

24

judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12112(a).

The plaintiff has the burden of showing that an accommodation seems reasonable on its face, and then the defendant must show special circumstances that demonstrate undue hardship. U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 401 (2002). Reasonable accommodations are defined as "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). A reasonable accommodation can include job restructuring and/or modified work schedules. 29 C.F.R. § 1630.2(o)(2)(ii). "Undue hardship" is defined as "significant difficulty or expense incurred" by the employer. 29 C.F.R. § 1630.2(p)(1). To determine whether an accommodation imposes undue hardship on an employer, the court should consider factors including: the nature and net cost of the accommodation, the overall financial resources of the employer and the facility, the number of employees at the facility, the effect of the accommodation on expenses and resources, the type of operation of the employer, the structure and functions of the workforce, the impact of the accommodation on the operation of the facility, and the impact of the accommodation on the ability of other employees to perform their duties. 29 C.F.R. § 1630.2(p)(2).

There is genuine factual dispute over the proper characterization of Billings' duties as a Dietary Staff member. For example, the job descriptions accompanying the performance evaluations done on Billings in 2000 and 2004 contain no lifting requirements, while the 2004

25

documents require lifting of fifteen pounds or more. Billings' historic performance evaluations do not bear out Carilion's claim that she could not do the job. The plaintiff argues that the only things Billings could not do without help were mop the entire dining room floor and take out heavy trash bags. Carilion claims that she was unable to perform several functions essential to her job including, but not limited to, cleaning the dining room and taking out the trash. Roe's affidavit submitted to the EEOC states that Billings could also not set up the coffee urns, carry baskets of cooked items, deliver patient tray carts, or operate the meat slicer. In this regard, the jury must make the necessary credibility determinations of the witnesses and evidence to determine the functions of Billings' job, which ones she was unable to perform, and if these were essential. Factors such as the amount of time spent on the duties Billings was unable to do and whether she was uniquely qualified to perform them should be considered. Ultimately, the jury must assess whether the duties Billings was unable to perform were fundamental job duties that bore more than a marginal relationship to her position.

Furthermore, there is a genuine factual dispute over whether Carilion could have offered Billings a reasonable accommodation. Billings asserts that all she needed was occasional help mopping and removing heavy trash bags. Defendants assert that because she was unable to perform the essential functions of her job, they were not required to restructure her job or modify her work. Additionally, it is appropriate for the jury to assess Billings' historic ability to do the job and whether the employee complaints, potential costs and impact of restructuring her position, and financial strain of the hospital at the time of Billings' termination were enough to constitute undue hardship so that the hospital was not required to make accommodations.

26

## VII.

On both the threshold question of whether Billings is disabled as defined by the ADA, and further whether she could perform the essential functions of position, with or without reasonable accommodations, neither side can show that they are entitled to judgment as a matter of law. Disputes remain over whether her impairment is substantial and on how to properly characterize her duties. These disputes affect whether Billings may be considered to be disabled and thus a qualified individual under the ADA. It is also proper for the factfinder to determine if there were reasonable accommodations available and if they would have caused Carilion undue hardship. Accordingly, it is **RECOMMENDED** that plaintiff and defendants' motions for summary judgment be **DENIED** in their entirety and this case set for jury trial.

The Clerk is directed to transmit the record in this case to Honorable Norman K. Moon, United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

Case 6:08-cv-00010-NKM-mfu   Document 77   Filed 07/13/09   Page 27 of 28   Pageid#: 1104

The Clerk of the Court is directed to send copies of this Report and Recommendation to all counsel of record.

Enter this 13th day of _July_____, 2009.

_____
Michael F. Urbanski
United States Magistrate Judge